**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division**

**GARY AIKEN**
12 Cross Creek Court
Phoenix, Maryland 21131

**NANCY AIKEN**
12 Cross Creek Court
Phoenix, Maryland 21131

*Plaintiffs,*

       v.

**VOLVO CAR USA LLC**
1800 Volvo Place
Mahwah, New Jersey 07430

    *Serve on:*
*The Corporation Trust Incorporated*
*Registered Agent*
*2405 York Road, Suite 201*
*Lutherville Timonium, Maryland 21093*

**VCFS AUTO LEASING COMPANY**
1800 Volvo Place
Mahwah, New Jersey 07430

    *Serve on:*
*CSC-Lawyers Incorporating Service Company*
*7 St. Paul Street, Suite 820*
*Baltimore, Maryland 21202*

**SHEEHY HUNT VALLEY LLC**
10401 York Road
Cockeysville, Maryland 21030

    *Serve on:*
*Business Filings International Incorporated*
*2405 York Road, Suite 201*
*Lutherville Timonium, Maryland 21093*

*Defendants.*

Case No. _____

**COMPLAINT**

Plaintiffs Gary Aiken and Nancy Aiken, through undersigned counsel, hereby file this Complaint against Volvo Car USA LLC ("Volvo"), VCFS Auto Leasing Company ("VCFS Auto"), and Sheehy Hunt Valley LLC ("Sheehy"), and allege, upon knowledge as to themselves and upon information and belief as to all other matters, as follows:

**INTRODUCTION**

1.      On June 30, 2025, Plaintiffs leased a new 2025 Volvo EX90 ("Defective Car") from Sheehy for a term of 39 months at a rate of $1,097.67 per month, with a $5,000.00 cash down payment, a $4,000.00 trade-in allowance, and $10,500.00 in manufacturer incentives including a $7,500.00 pass-through of the federal EV tax credit. Approximately three months after delivery, the Aikens paid an additional $3,244.00 for the purchase and installation of dealer-provided accessories.

2.      Within just a few days after the Defective Car was delivered to the Aikens, numerous defects manifested, including the display going black, GPS navigation system failure, electronic key failure, the built-in phone system becoming inoperative, and the radio cutting off. The Defective Car was taken to Sheehy's service shop, where personnel advised Mr. Aiken that Volvo was aware of software defects in the vehicle and was working to resolve them, with corrected software expected to be available in the fourth quarter of 2025 — several months away. These defects were known to Volvo at the time the Aikens leased the Defective Car and were not disclosed to them; had they been disclosed, the Aikens would not have entered into the Lease Agreement.

3.      The Aikens have experienced dangerous defects with the Defective Car, including the vehicle's dashboard display going dark while driving on the highway, the GPS navigation

system failing silently mid-route, spontaneous headlight failure/shutoff, and flashing lights on the display indicating a critical system failure while driving. The Defective Car's electronic key has at times failed to function entirely, leaving the Aikens unable to access or operate the vehicle, and on one occasion, leaving Mr. Aiken stranded outside the vehicle. The Defective Car has required repeated reboots for the infotainment, radio, and Bluetooth audio systems, and failed to charge on at least one occasion.

4.     Due to recurring and prolonged defects, the Defective Car has been out of commission at Sheehy's service shop for more than 177 cumulative days since delivery. These experiences, taken together, have substantially impaired the Aikens' use of the Defective Car and their confidence in its safety and performance. The Defective Car persistently fails to perform as warranted, leaving the Aikens without a reliable and safe means of using the Defective Car. The Defective Car was a lemon upon delivery to the Aikens. The Aikens are therefore entitled to monetary damages and reasonable attorney's fees under federal and Maryland state law.

**PARTIES**

5.     Plaintiff Gary Aiken is an individual consumer over the age of 65 residing in Baltimore County, Maryland.

6.     Plaintiff Nancy Aiken is an individual consumer over the age of 65 residing in Baltimore County, Maryland.

7.     Defendant Volvo Car USA LLC is a Delaware limited liability company with its principal place of business located at 1800 Volvo Place, Mahwah, New Jersey 07430. At all times relevant to this action, Volvo Car USA LLC distributed, sold, leased, and warranted vehicles under the Volvo brand name to consumers in Maryland. Volvo Car USA LLC is registered to conduct business in Maryland.

#997438                                   3

8.      Defendant VCFS Auto Leasing Company is a Delaware statutory trust with its principal place of business located at 1800 Volvo Place, Mahwah, New Jersey 07430. At all times relevant to this action, VCFS Auto Leasing Company financed and leased vehicles under the Volvo brand name to consumers in Maryland. VCFS Auto Leasing Company is registered to conduct business in Maryland.

9.      Defendant Sheehy Hunt Valley LLC is a Maryland limited liability company with its principal place of business located at 10401 York Road, Cockeysville, Maryland 21030. At all times relevant to this action, Defendant Sheehy Hunt Valley LLC sold, leased, serviced, and warranted vehicles under the Volvo brand name to consumers in Maryland.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

11.     This Court has supplemental jurisdiction over the Maryland state law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same lease, Defective Car, repair attempts, warranty disputes, and communications among Plaintiffs, Volvo, Sheehy, and VCFS Auto as the federal claim in Count I, and therefore form part of the same case or controversy as the claim over which this Court has original jurisdiction under 28 U.S.C. § 1331.

12.     The Court has personal jurisdiction over Defendant Volvo Car USA LLC because, at all relevant times, Volvo Car USA LLC purposefully availed itself of the privilege of doing business in the State of Maryland by distributing, selling, leasing, and warrantying vehicles under the Volvo brand name to consumers in Maryland. Moreover, the causes of action pled in this complaint arise directly from Volvo Car USA LLC's actions causing injury in the State.

#997438                                    4

13.     The Court has personal jurisdiction over Defendant VCFS Auto Leasing Company because, at all relevant times, VCFS Auto Leasing Company purposefully availed itself of the privilege of doing business in the State of Maryland by financing and leasing vehicles under the Volvo brand name to consumers in Maryland. Moreover, the causes of action pled in this complaint arise directly from VCFS Auto Leasing Company's actions causing injury in the State.

14.     The Court has personal jurisdiction over Defendant Sheehy Hunt Valley LLC because, at all relevant times, Sheehy Hunt Valley LLC is a Maryland limited liability company with its principal place of business in Maryland.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF FACTS

16.     On June 30, 2025, Plaintiffs leased the Defective Car (VIN # 7JDEV3VK2SG014020) from Defendant Sheehy Hunt Valley LLC for a term of 39 months.

17.     Plaintiffs executed a Maryland Motor Vehicle Lease Agreement with Defendant Sheehy Hunt Valley LLC.

18.     The Gross Capitalized Cost of the Defective Car was $83,072.45.

19.     The Plaintiff's monthly payment for the Defective Car pursuant to the Lease Agreement is $1,097.67 per month. The total consideration paid at execution included a $5,000.00 cash down payment, a $4,000.00 trade-in allowance for Plaintiffs' prior vehicle, and $10,500.00 in manufacturer incentives, of which $7,500.00 was a pass-through of the federal EV tax credit available to lessors under the Inflation Reduction Act and $3,000.00 in Volvo

promotional credits. Approximately three months after delivery, the Aikens paid an additional $3,244.00 for the purchase and installation of dealer-provided accessories.

20.     Defendant Sheehy Hunt Valley LLC assigned the Lease Agreement to Defendant VCFS Auto Leasing Company.

21.     On July 2, 2025 – two days after delivery of the Defective Car – the DC fast charger was inoperative. The Defective Car was taken to Sheehy for service.

22.     At the time of delivery, no Volvo home charger had been installed at the Aikens' residence. The only readily available charging option was a Tesla fast charger. Despite the Defective Car having been delivered with a charging adapter that purported to be compatible with the Tesla fast charger, Mr. Aiken was unable to charge the vehicle at a Tesla fast charger. When Mr. Aiken sought assistance from Sheehy's sales and service personnel, neither was able to explain how to charge the vehicle. They directed Mr. Aiken to contact Volvo Roadside Assistance, who walked him through the charging process — a process that required Mr. Aiken to independently locate and review a Volvo technical bulletin. Neither the dealer nor Volvo's technical service representative was initially able to provide Mr. Aiken with accurate instructions on how to charge the vehicle he had just leased.

23.     On July 18, 2025, the infotainment screen rebooted while the Defective Car was being driven. The FM radio and Bluetooth audio were inoperative. The digital phone key also failed. The Defective Car was taken to Sheehy for service. Sheehy performed a hard reset and software update on the Defective Car.

24.     On September 10, 2025, Plaintiffs brought the Defective Car to Sheehy for Dealer-provided accessories installation, in reliance on use of the vehicle. These items included a

trunk mat, mat set, carpet, towing hook, control unit, and towbar semi.  The Aikens paid

$3,244.00 for the purchase and installation of these dealer-provided accessories.

25.    On November 13, 2025, the driver headlamp assembly failed due to internal fault. The Defective Car was taken to Sheehy for service. The driver headlamp assembly was replaced under warranty. The Defective Car was out of commission from November 13, 2025, through December 19, 2025, totaling 36 days.

26.    On January 28, 2026, the Defective Car no longer accepted the Plaintiff's home charger (recommended by Volvo) and generated an error message. The Defective Car was taken to Sheehy for service. The Defective Car was out of commission from January 28, 2026, through May 5, 2026, totaling 97 days. Upon intake, Sheehy's service department advised Mr. Aiken that this was a recently discovered defect of the EX90, that they had approximately five other EX90s in the shop with the same problem, and that the issue required new hardware and new software to be created by Volvo to correct it.

27.    On May 23, 2026, the digital phone key disconnected from the Defective Car, leaving Mr. Aiken stranded approximately an hour from his home and locked out of the Defective Car. When Mr. Aiken approached the Defective Car, it did not unlock or blink its lights as expected. Mr. Aiken pulled the door handle, but it did not unlock. Mr. Aiken tried to use the Volvo app to unlock the Defective Car, but the app generated a message showing it did not unlock. Mr. Aiken called Volvo roadside assistance, who advised him that the digital key had disconnected from the Defective Car. Roadside assistance attempted to reconnect the digital key, and advised that Mr. Aiken needed to wait about half an hour for the connection to be reestablished, and if it did not, he would require a physical key. Mr. Aiken called Mrs. Aiken, who began driving to his location with a physical key. The weather was cool and rainy, so Mr.

Aiken found a dry place to wait for the digital key to reconnect, about a ten-minute walk from where the Defective Car was parked. Mr. Aiken was recovering from recent surgery, and walking was painful. Half an hour later, Mr. Aiken walked ten minutes back to the Defective Car to retry the digital key, and it still did not unlock. Mr. Aiken felt sore, cold, wet, and uncomfortable. Just as Mr. Aiken was about to walk to a nearby restaurant a half mile away, the Defective Car's lights started blinking, indicating that it had finally unlocked. Mr. Aiken waited for approximately one hour between calling Roadside assistance and when the digital key ultimately reconnected to the Defective Car.

28.     On May 26, 2026, multiple critical warning lights began flashing on the vehicle's dashboard while Mrs. Aiken was driving the vehicle. The warning lights were described as signaling a critical fault with the driver assistance or braking and propulsion systems. Plaintiffs called Volvo roadside assistance, who advised rebooting the vehicle, and that Plaintiffs should immediately pull over and have the vehicle towed to the Sheehy if the warning reoccurred. The warning lights reappeared three times during this incident. The Defective Car was taken to Sheehy for service. The Defective Car was out of commission from May 26, 2026, through June 5, 2026, totaling 10 days.

29.     On the evening of June 11, 2026, the Aikens were driving home on a highway in the Potomac, Maryland area following their grandchild's fifth-grade graduation ceremony and dinner. In the vehicle with Mr. and Mrs. Aiken were a 13-year-old grandchild and Mr. Aiken's 91-year-old mother. It was dark and raining. The red and yellow dashboard brake warning lights began blinking repeatedly, along with other dashboard warning lights, occurring approximately ten times over a five-to-ten-minute period before stopping. Mr. Aiken faced an impossible choice: pull over on a dark, rain-slicked highway at night with his elderly mother and young

grandchild, or continue driving despite the vehicle's active safety warnings. The Defective Car was brought to Sheehy the following morning, June 12, 2026. As of the date of this filing more than a month later, the Defective Car remains at Sheehy's shop. Despite Mr. Aiken's repeated requests for information, Sheehy has been unable to provide any explanation, timeline, or proposed course of repair, and has indicated only that it is awaiting direction from Volvo, which has taken no discernible action to resolve the matter.

30.     On multiple occasions when the Defective Car was in the shop for repairs, Sheehy provided Mr. Aiken with a loaner vehicle. Because the loaner vehicles are new cars held for resale, Sheehy required that they be returned in like-new condition and assessed charges for even minor cosmetic wear. As a result, Mr. Aiken has been charged for damage to loaner vehicles, including the cost of a full tire replacement after a nail was discovered in a loaner tire — Sheehy refused to permit a standard patch because a patched tire could not be sold as new. To date, Plaintiffs have incurred loaner-related charges in the range of $1,000.00 as a direct consequence of having to use loaner vehicles necessitated by the Defective Car's repeated repair visits.

31.     The loaner vehicles provided by Sheehy have been gasoline-powered. The Aikens chose to lease the Defective Car, an electronic vehicle, to both avoid the cost and inconvenience of purchasing gasoline, and to further their desire to lessen harmful carbon emissions. During the extended periods in which the Defective Car has been in the shop for repairs, Plaintiffs have purchased gasoline to power loaner vehicles, directly undermining these primary purposes.

32.     The $7,500.00 federal EV tax credit that was passed through to the Aikens as part of the manufacturer incentives at the time of execution of the Lease Agreement is no longer available. The Inflation Reduction Act's commercial clean vehicle credit that enabled dealers and lessors to offer this pass-through to lessees expired on September 30, 2025. As a result,

should the Aikens need to lease or purchase a replacement electric vehicle, they will be required to pay at least $7,500.00 more than they would have paid had the Defective Car conformed to its warranty. This loss is a direct and proximate consequence of Defendants' failure to deliver a conforming vehicle during the period in which the credit was available.

33.     The Aikens leased the Defective Car for regular family use, including transportation of their six minor grandchildren, who ranged in age from one to thirteen years at the time of the lease. Indeed, for this reason, the Aikens selected the optional built-in child safety seat feature for the Defective Car. Because Sheehy requires loaner vehicles to be returned in like-new condition, Mr. Aiken has been unable to use loaner vehicles for transporting grandchildren without risk of damage charges. As a result, a significant intended use of the Defective Car — family transportation — has been entirely unavailable to the Aikens throughout the extended periods the vehicle has been out of service.

**<u>COUNT I</u>**
**(Plaintiffs Against Volvo)**
***Breach of Consumer Product Warranties, 15 U.S.C. § 2310***
***(The Magnuson-Moss Warranty Act)***

34.     Plaintiffs reassert and reallege the allegations contained in the foregoing paragraphs, and incorporate those allegations by reference as if set forth fully herein.

35.     Pursuant to § 2310(d)(1), "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." Pursuant to § 2301(4) and § 2301(5), Volvo is a supplier and warrantor.

36.     Pursuant to § 2301(6)(A), the term "written warranty" includes "any written affirmation of fact or written promise made in connection with the sale of a consumer product by

a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." Defendant Volvo Car USA LLC issued a warranty with the Defective Car—the Volvo 2025 New Vehicle Limited Warranty—which warrants that "repairs required to Volvo passenger vehicles due to defects in material or workmanship and occurring under normal use will be made at no charge for parts and/or labor" for four (4) years or 50,000 miles, whichever occurs first. This constitutes a "written warranty" within the meaning of § 2301(6)(A). Section 28 of the Lease Agreement further provides that "if the [v]ehicle is new, the [v]ehicle is covered by the manufacturer's standard new car warranty," confirming that Plaintiffs, as lessees of a new vehicle, are entitled to the benefit of the Volvo New Vehicle Limited Warranty.

37.     Pursuant to § 2310(d)(1), Plaintiffs may bring suit for Volvo's failure to comply with any obligation under the Volvo New Vehicle Limited Warranty. Volvo's obligation under that warranty is to repair defects in material or workmanship at no charge during the warranty period. Although Volvo repaired some defects, Volvo failed to meet these obligations within a reasonable time or number of repair attempts, giving rise to liability under § 2310(d)(1). Moreover, as of the filing of this Complaint, the Defective Car has been in the shop for repairs for 34 days, with no timeline communicated for anticipated repair.

38.     Volvo as warrantor and supplier failed to comply with its obligations under the Volvo New Vehicle Limited Warranty and the Defective Car's implied warranty because Volvo failed to correct the aforementioned defects in material or workmanship after a reasonable time or number of repair attempts during the warranty period, indicating that the vehicle is unreliable and not reasonably fit for its intended purpose.

39.    As a direct and proximate result of Volvo's breach, Plaintiffs suffered damages, including, but not limited to, the monies paid pursuant to the lease, costs associated with loss of use and inconvenience, and monies paid in reliance on use of the Defective Car.

40.    § 2310(d)(2) further provides that if a consumer prevails in any action under § 2310(d)(1), the consumer may be entitled to attorneys' fees incurred in commencement and prosecution of such action.

41.    Furthermore, Plaintiffs' right to the relief sought herein arose upon Volvo's failure to conform the Defective Car to the applicable warranty after a reasonable number of repair attempts. That right is not extinguished by any subsequent repair, cure, or offer of settlement; even if all known defects were resolved after the filing of this action, Plaintiffs would remain entitled to the relief requested herein under applicable federal and Maryland state law.

**WHEREFORE,** Plaintiffs respectfully request judgment in their favor and against Volvo Car USA LLC, for,

   a. $5,000.00 for cash paid by Plaintiffs at the time of execution of the Lease Agreement;

   b. $4,000.00 for trade in allowance for Plaintiffs' former vehicle at the time of execution of the Lease Agreement;

   c. $10,500.00 for manufacturer incentives applied at execution of the Lease Agreement, including a $7,500.00 pass-through of the federal EV tax credit that is no longer available and cannot be recovered upon replacement;

   d. $14,269.71 for 13 monthly payments of $1,097.67 through June 30, 2026, as well as additional future monthly payments in an amount to be proven at trial;

   e. $3,244.00 for items purchased on reliance on use of the vehicle;

f.  Costs associated with loss of use and inconvenience, in an amount to be proven at trial;

g.  All attorneys' fees, costs, interest, and expenses as permitted by law; and

h.  Any other relief the Court deems just and proper.

## COUNT II
### (Plaintiffs Against Volvo)
### *Breach of Warranties Pursuant to Consumer Motor Vehicle Leasing Contracts, Md. Code Ann., Comm. Law § 14-2004*

42.  Plaintiffs reassert and reallege the allegations contained in the foregoing paragraphs, and incorporate those allegations by reference as if set forth fully herein.

43.  Md. Code Ann., Comm. Law ("CL") § 14-2001(n) establishes a default warranty period of "the earlier of: (1) The period of the motor vehicle's first 15,000 miles of operation; or (2) 15 months following the date of original delivery of the motor vehicle to the lessee."

44.  At all times relevant hereto, the above-described defects to the Defective Car arose within the first 15,000 miles of the Defective Car's operation, and within the first 15 months following delivery of the Defective Car to Plaintiffs (*i.e.*, before September 30, 2026).

45.  CL § 14-2004(d)(1)(i) provides that "if, during the warranty period, the manufacturer or factory branch, its agent or authorized dealer, or the lessor or the lessor's agent is unable to repair or correct any nonconformity, defect, or condition that substantially impairs the use and market value of the motor vehicle to the lessee after a reasonable number of attempts, the manufacturer or factory branch, at the option of the lessee shall: 1. Replace the motor vehicle with a comparable motor vehicle acceptable to the lessee; or 2. Accept return of the motor vehicle from the lessee and refund to the lessee all money paid by the lessee to repair the defect, condition, or nonconformity pursuant to a lease, including all excise tax, license fees, registration

fees, and any similar governmental charges, less a reasonable allowance for the lessee's unimpaired use of the vehicle."

46.    CL § 14-2004(e)(2) presumes that a reasonable number of attempts have been made to conform the vehicle to applicable warranties if "the motor vehicle is out of service by reason of repair of 1 or more nonconformities, defects, or conditions for a cumulative total of 30 or more days during the warranty period."

47.    The aforementioned defects substantially impaired the use and value of the Defective Car and have not been corrected in a reasonable number of attempts, causing the Defective Car to be out of service for repair for a total of thirty (30) or more days during the warranty period.

48.    On March 17, 2026, Plaintiffs, through counsel, sent a statutory notice to all Defendants demanding that Defendants either replace the Defective Car with a comparable vehicle and execute a new lease agreement, or accept return of the Defective Car and refund Plaintiffs for all monies paid pursuant to the Lease Agreement, all monies paid in reliance on use of the Defective Car, and all monies paid during the period in which the Defective Car was unavailable due to the nonconformity.

49.    On April 1, 2026, Volvo acknowledged receipt of Plaintiff's March 17, 2026, letter and requested the Lease Agreement from Plaintiff's counsel.

50.    On April 8, 2026, Volvo offered Plaintiffs either a cash-and-keep settlement in the amount of $13,000.00 or a statutory repurchase of the Defective Car.

51.    On April 13, 2026, Plaintiff's counsel emailed Volvo requesting additional information regarding the statutory repurchase, and requested a phone call on April 14, 2026.

52.     On April 15, 2026, Plaintiff's counsel emailed Volvo requesting a phone call or reply email by 12:00 p.m. EST on April 16, 2026, to discuss a statutory repurchase.

53.     On April 17, 2026, Plaintiff's counsel again emailed Volvo to confirm that no return phone call or email had been received, despite several attempts to reach Volvo.

54.     On May 15, 2026, Plaintiff's counsel sent a renewed statutory notice to Volvo. Plaintiff's counsel further requested a calculation of the repurchase amount and a proposed schedule for tender of the vehicle and release of Plaintiffs from the Lease Agreement. To date, no response has been received from Volvo.

55.     Volvo, in refusing to comply with its obligation to discuss return and repurchase of the Defective Car, acted in bad faith and violated Plaintiffs' rights under CL § 14-2004.

56.     Volvo's violation of CL § 14-2004 constitutes an unfair and deceptive trade practice within the meaning of CL § 14-2007(c).

57.     As a direct and proximate result of Volvo's breach, Plaintiffs suffered damages, including, but not limited to, the monies paid pursuant to the lease, costs associated with loss of use and inconvenience, and monies paid in reliance on use of the Defective Car.

58.     CL § 14-2004(d)(2)(i) further entitles Plaintiff to be "compensated by the manufacturer for any money paid during the period in which the motor vehicle was not available due to the defect, condition, or nonconformity."

**WHEREFORE,** Plaintiffs respectfully request judgment in their favor and against Volvo, for,

        a.  $5,000.00 for cash paid by Plaintiffs at the time of execution of the Lease Agreement;

b. $4,000.00 for trade-in allowance for Plaintiffs' prior vehicle at the time of execution of the Lease Agreement;

c. $10,500.00 for manufacturer incentives applied at execution of the Lease Agreement, including a $7,500.00 pass-through of the federal EV tax credit that is no longer available and cannot be recovered upon replacement;

d. $14,269.71 for 13 monthly payments of $1,097.67 through June 30, 2026, as well as additional future monthly payments in an amount to be proven at trial;

e. $3,244.00 for accessories purchased in reliance on use of the Defective Car;

f. Loaner vehicle charges in the range of $1,000.00 incurred as a result of Sheehy's like-new condition requirement for loaner vehicles, including full tire replacement costs;

g. Gasoline costs incurred during periods when Plaintiffs were required to use gasoline-powered loaner vehicles in lieu of the Defective Car, in an amount to be proven at trial;

h. All excise tax, license fees, registration fees, and any other similar governmental charges, less a reasonable allowance for the lessee's unimpaired use, to be proven at trial;

i. Costs associated with loss of use and inconvenience, in an amount to be proven at trial;

j. All attorneys' fees, costs, interest, and expenses as permitted by law, including pursuant to CL § 14-2007(b)(1); and

k. Any other relief the Court deems just and proper.

## COUNT III
### (Plaintiffs Against all Defendants)
*Breach of Implied Warranty of Merchantability (CL § 2A-212)*

59.     Plaintiffs reassert and reallege the allegations contained in the foregoing paragraphs, and incorporate those allegations by reference as if set forth fully herein.

60.     CL § 2A-212(1) provides that "a warranty that the goods will be merchantable is implied in a lease contract if the lessor is a merchant with respect to goods of that kind."

61.     Pursuant to CL § 2A-103(h), the Defective Car is a "good," and pursuant to CL § 2A-104(1), Defendants are "merchants" of that good.

62.     To be "merchantable," the "goods" must at least be fit for the ordinary purpose for which such goods are used and "pass without objection in the trade under the contract description." At the time of the lease and delivery of the Defective Car to Plaintiffs, Defendants implicitly and explicitly warranted that the vehicle would be fit for its ordinary purpose and would pass without objection in the automobile manufacturing and leasing trades.

63.     The aforementioned defects in the Defective Car constitute a breach of the implied warranty of merchantability by Defendants because it was not fit for reasonably safe transportation when it is used in its normal manner.

64.     The aforementioned defects in the Defective Car presented a substantial health and safety risk to Plaintiffs.

65.     As a direct and proximate result of Defendants' breach, Plaintiffs suffered damages.

66.     Pursuant to CL § 2A-519(4), as a result of Defendants' breach, Plaintiff is entitled to the "present value at the time and place of acceptance of the difference between the value of the use of the goods accepted and the value if they had been as warranted for the lease term."

The value of the use of the goods at acceptance was $0 because the car was completely defective. The value of the Defective Car would have had if it had been as warranted was $83,072.45, *i.e.*, the Gross Capitalized Cost.

67.     Also pursuant to § 2A-519(4), Plaintiffs are entitled to incidental and consequential damages proximately caused by Defendants' breach, including, but not limited to, costs associated with loss of use and inconvenience, monies paid in reliance on use of the Defective Car, loaner vehicle charges, and gasoline costs incurred while using loaner vehicles in lieu of the Defective Car.

**WHEREFORE,** Plaintiffs respectfully request judgment in their favor and against Defendants, jointly and severally, for,

   a. The difference at the time and place of acceptance between the value of the Defective Car accepted and the value it would have had if it had been as warranted, totaling approximately $83,072.45, or an amount to be proven at trial;

   b. $3,244.00 for items purchased on reliance on use of the vehicle;

   c. Loaner vehicle charges in the range of $1,000.00 incurred as a result of Sheehy's like-new condition requirement for loaner vehicles, including full tire replacement costs;

   d. Gasoline costs incurred during periods when Plaintiffs were required to use gasoline-powered loaner vehicles in lieu of the Defective Car, in an amount to be proven at trial;

   e. Costs associated with loss of use and inconvenience, in an amount to be proven at trial; and

f.   Any other relief the Court deems just and proper.


Date: July 16, 2026

Respectfully submitted,


_____/s/ Ella Aiken_____
Ella Aiken (Federal Bar No. 30613)
Sarah Simmons (Federal Bar No. 24279)
GALLAGHER LLP
650 S. Exeter Street, Suite 1200
Baltimore, Maryland 21202
eaiken@gallagherllp.com
ssimmons@gallagherllp.com
Telephone: (410) 951-1420
Facsimile: (410) 468-2786

*Counsel for Plaintiffs*
*Gary Aiken and Nancy Aiken*